[No. E010069. Fourth Dist., Div. Two. Jan. 5, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
RONNIE M. RESENDEZ, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

## COUNSEL

Donna L. Groman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Joyce N. Burnett, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

TIMLIN, J.—Defendant appeals from the judgment entered below upon his conviction by jury of one count of assault with a firearm (Pen. Code, § 245, subd. (a)(2)) and a true finding by the jury that defendant personally used a firearm in the commission of the assault (Pen. Code, § 12022.5).[1]

On appeal, defendant raises the following contentions: (1) The trial court erred by compelling defendant's spouse to testify against him at his trial; (2) the trial court erred by allowing the victim of defendant's assault to testify at his trial; (3) the trial court exceeded its jurisdictional authority in ordering defendant to pay direct restitution to the victim of the assault and in setting the amount of that restitution at $100,000; and (4) the trial court erred by denying defendant a reasonable opportunity to contest the amount of the restitution it (the trial court) had ordered him to pay to the victim. We shall conclude that none of these contentions compel a reversal of the judgment and/or the true finding entered below. However, we shall also conclude that the trial court's restitution order must be vacated and that the matter must be remanded to the sentencing court with directions that it conduct a hearing and make appropriate determinations under Government Code section 13967.

---

[1] Unless otherwise indicated, all statutory citations refer to the Penal Code.

## FACTS AND PROCEDURAL BACKGROUND[2]

On the evening of April 26, 1991, defendant and his wife (Sylvia) had an argument at their residence, during which argument defendant struck Sylvia in the mouth. Defendant then left the residence with friends. While defendant was away, Sylvia notified the police of the fight she had had with defendant and then asked her sister, Linda, if she (Linda) would help her (Sylvia) pack her things and vacate the residence.

Linda enlisted the aid of her boyfriend, Lester, in assisting Sylvia in leaving. Lester and Linda went to Sylvia's and defendant's residence in Lester's truck, and the two of them began to help Sylvia pack her (and her baby's) things into the truck.

While this packing process was going on, defendant returned to the residence in a car which had several of his acquaintances in it. Defendant got out of the car and walked (alone) into the residence, passed Sylvia without speaking to her, noticed Linda and Lester dismantling a baby crib, and entered the bedroom. He removed a sawed-off shotgun from behind the bed and shoved it down into the back pocket of his pants so that the stock, although more or less concealed by his jacket, protruded up under his arm. Defendant then exited the residence and went to speak to Sylvia as she was loading various items into the back of Lester's truck. Defendant attempted to convince Sylvia not to leave. (This exchange was characterized by defendant and Sylvia as a simple conversation, but was characterized by Linda as an argument.)

While defendant and Sylvia were talking, defendant asked her (in reference to Lester, whom defendant did not know), "[W]ho is this mother fucker in my house?" At just that moment, Lester was coming out of the residence with some items to be placed in his truck. Upon hearing defendant, Lester responded, "Who are you calling a mother fucker?"[3] Defendant responded by turning toward Lester and saying, "[D]on't fuck with me, mother fucker." Defendant then pulled the sawed-off shotgun out of his pocket and shot Lester in the neck with it. Defendant immediately ran over to the car in which he had returned to the residence, got in the car and left.

On May 20, 1991, the People filed an information charging defendant with the attempted murder of Lester (§§ 664/187, subd. (a))—which charge

---

[2]We set forth the facts of this case, having viewed the evidence contained in the record on appeal "in the light most favorable to the judgment below." (*People* v. *Rich* (1988) 45 Cal.3d 1036, 1081 [248 Cal.Rptr. 510, 755 P.2d 960].)

[3]Contradictory testimony given in defendant's trial had Lester at this point saying something to defendant to the effect of: "Calm down. Take it easy."

was attended by the two-sentence enhancement allegations that (i) defendant, in committing the attempted murder, personally used a firearm within the meaning of sections 12022.5 and 1203.06, subdivision (a)(1) and (ii) defendant, in committing the attempted murder, personally and intentionally inflicted great bodily injury upon Lester within the meaning of section 12022.7.

A jury trial commenced in the matter on July 24, 1991. The People's case-in-chief adduced evidence which comports with the factual description of the events set forth above. Defendant's case-in-chief (which included defendant's testimony on his own behalf) was to the following effect: (1) That Lester had come up to defendant during his (defendant's) conversation with Sylvia; (2) that Lester had then shoved defendant and advanced on him (defendant) as if he (Lester) were going to physically assault defendant; (3) that defendant pulled the sawed-off shotgun out of his pocket and swung it "club fashion" at Lester to defend himself; and (4) that the sawed-off shotgun accidently "went off," striking Lester in the neck.

On August 2, 1991, the jury returned with a guilty verdict on one count of assault with a firearm (§ 245, subd. (a)(2)), a lesser included offense of the charged attempted murder, and also found true the special allegation that defendant had personally used a firearm in committing the assault. The jury did not find true the special allegation that defendant had personally and intentionally inflicted great bodily injury on Lester. Thereafter, on September 12, 1991, the trial court sentenced defendant to an upper term of four years in state prison on the charge of assault with a firearm and to a consecutive five-year sentence enhancement on the "personal use of a firearm" sentence enhancement allegation found true by the jury—for a total term of nine years in state prison. The trial court also ordered defendant to pay $100,000 of restitution to Lester. .

Defendant filed a timely appeal, raising the issues previously noted.

Additional facts will be referred to, as needed, in the discussion which follows.

DISCUSSION

I.

*Compelling Defendant's Spouse, Sylvia, to Testify Against
Defendant at Trial*

Defendant's first contention on appeal is to the effect that the trial court prejudicially erred in compelling Sylvia to testify against defendant (her

spouse) at the People's behest during defendant's trial—in direct violation of Sylvia's statutory privileges against having to give such testimony and against being called as a witness to give such testimony. Of significance to the trial court's ruling was the fact that Sylvia had testified against defendant during defendant's preliminary hearing. The following statutory provisions, all contained in the Evidence Code, pertain to our analysis of defendant's contention:

(1) Section 970: "Except as otherwise provided by statute, a married person has a privilege not to testify against his spouse in any proceeding."

(2) Section 971: "Except as otherwise provided by statute, a married person whose spouse is a party to a proceeding has a privilege not to be called as a witness by an adverse party to that proceeding without the prior express consent of the spouse having the privilege under this section unless the party calling the spouse does so in good faith without knowledge of the marital relationship."

(3) Section 973, subdivision (a): "Unless erroneously compelled to do so, a married person who testifies in a proceeding to which his spouse is a party, or who testifies against his spouse in any proceeding, does not have a privilege under this article in the proceeding in which such testimony is given."

Prior to Sylvia's being called as a witness in defendant's trial, the following exchange took place between the trial court, defendant's trial counsel and Sylvia:

"THE COURT: . . . Matter of Ronnie Mark Resendez. Mr. Gunn, we're out of the presence of the jury. You wanted to put something on the record.

"MR. GUNN [defense counsel]: Yes. On the motion I had for Sylvia Resendez of not testifying.

"THE COURT: Yes.

"MR. GUNN: I wanted the record to be clear that it's my understanding that she wants to invoke the privilege.

"THE COURT: Let's bring her in and find out.

"MR. GUNN: Okay.

". . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: Come forward, Miss Resendez. [¶] Would you state your name for the record.

"MRS. RESENDEZ: Sylvia Resendez.

"THE COURT: You're the wife of the defendant?

"MRS. RESENDEZ: Yes.

"THE COURT: Did you previously testify in this matter in the municipal court [at the preliminary hearing]?

"MRS. RESENDEZ: Yes.

"THE COURT: Are you aware of any privilege that you wish to exercise at this time? Regarding your testimony?

"MRS. RESENDEZ: Well, I didn't want to testify due to the fact it was my husband. But they told m[e] that I had to.

"THE COURT: What about now?

"MR. GUNN: What about now?

"MRS. RESENDEZ: No, I don't want to.

"THE COURT: You would prefer not to; is that what you're saying?

"MRS. RESENDEZ: Yes.

". . . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: . . . You've raised an interesting question, Mr. Gunn, as to whether the implied waiver under [Evidence Code section] 973 applies if the spouse was not aware of the privilege. [¶] Miss Resendez, were you aware you had a privilege not to testify?

"MRS. RESENDEZ: No, I wasn't.

"THE COURT: Or may have had a privilege?

"MRS. RESENDEZ: No.

"THE COURT: Did you ever discuss that with anybody? Or with an attorney?

"MRS. RESENDEZ: No.

"THE COURT: All right. Well, it appears to be something that is not contemplated by the statute. The statute says that unless erroneously compelled to do so, a married person who testifies in a proceeding to which his spouse is a party does not have a privilege under this article in the proceeding in which such testimony is given. [¶] We're also hampered by the fact that this determination is being made long after the fact, and we don't really know what her state of mind was at that time because there's nothing on the record to indicate what her state of mind was on May 13th, 1991 [the date of defendant's preliminary hearing]. [¶] But I'm going to stand by the ruling that's been made."

■ In response to defendant's contention that the trial court erred in compelling Sylvia's trial testimony, the People argue that the trial court ruled correctly under Evidence Code section 973 that Sylvia did not have a privilege not to testify against defendant at defendant's trial (or a privilege not to be called to so testify) as a consequence of her having testified against defendant during defendant's preliminary hearing. We agree with the People's position on this issue.

There is no question but that Sylvia held the testimonial privileges here in issue, and that she was entitled to assert them, prior to testifying at defendant's preliminary hearing. There is also no question but that Sylvia did testify against defendant during defendant's preliminary hearing. Thus, it would appear, at least on the face of it, that Sylvia, by virtue of her having testified during defendant's preliminary hearing, no longer held those testimonial privileges once defendant's trial commenced. (Comment of Assem. Com. on Judiciary concerning Evid. Code, § 973, subd. (a): "Nor may a wife testify against her husband at a preliminary hearing of a criminal action and refuse to testify against him at the trial." See also *Fortes* v. *Municipal Court* (1980) 113 Cal.App.3d 704, 711 [170 Cal.Rptr. 292].)

There *is*, however, a question as to whether Sylvia's preliminary hearing testimony came within the "erroneously compelled" exception to Evidence Code section 973—and, thus, whether her testimonial privileges under Evidence Code sections 970 and 971 were preserved insofar as defendant's trial was concerned. There are two "sub-issues" which relate to this inquiry:

(1) The first "sub-issue" is the meaning of the phrase "erroneously compelled." While there is no statutory or case authority which directly addresses this question, it is unnecessary for us to reach a precise definition of that phrase in this case. ■ As the holder of the privileges here in

issue (as well as the one who wished to invoke the application of the privileges), it was incumbent on Sylvia to establish the circumstances surrounding her having testified during defendant's preliminary hearing which caused that testimony to come within the "erroneously compelled" exception to Evidence Code section 973.[4] ■ The only showing made by Sylvia to establish the fact that she had been "erroneously compelled" to testify during defendant's preliminary hearing was her statement to the trial court: "Well, I didn't want to testify due to the fact it was my husband. But *they* told m[e] that I had to." (Italics added.) *Whatever* "erroneously compelled" means, this showing is insufficient to establish the fact of any such compulsion.

The word "compel" is commonly understood to carry with it a connotation of irresistible force.[5] Sylvia's statement to the court is entirely devoid of facts demonstrating *who* it was who told her that she had to testify at defendant's preliminary hearing and *how* that statement to her, absent other surrounding circumstances, truly compelled her to testify during defendant's preliminary hearing. In the absence of such facts, we will not simply conclude that Sylvia's preliminary hearing testimony was "compelled"— much less that it was "erroneously compelled."

(2) The second "sub-issue" is whether Sylvia was entitled to be advised of her testimonial privileges under Evidence Code sections 970 and 971 (by the trial court or by the People) prior to her testifying during the preliminary hearing. ■ Defendant argues on appeal that Sylvia's preliminary hearing testimony cannot be deemed a valid "waiver" of her privileges because she was not aware that she possessed those privileges. We are unaware of any obligation borne by the trial court (or, for that matter, by any party to a proceeding, including a spouse) to sua sponte advise a witness (a) of the existence of the privileges here in issue and/or (b) of the potential loss of those privileges under the provisions of Evidence Code section 973. Further, defendant has cited no authority for such a proposition. These privileges are not constitutionally mandated and/or protected. Consequently, we hold that Evidence Code section 973 is operative even though a witness spouse has

---

[4]See, generally, *Fortes* v. *Municipal Court, supra,* 113 Cal.App.3d at page 711, footnote 6: " 'Under this code, as under existing law, the party claiming a privilege has the burden of proof on the preliminary facts. [Citations.] The proponent of the proffered evidence, however, has the burden of proof upon any preliminary fact necessary to show that an exception to the privilege is applicable.' " By force of logic, then, a party (or witness) claiming a privilege has the burden of proof on the facts necessary to establish an "exception" to the loss of the privilege.

[5]Webster's all-encompassing definition of the word contains the following definitions: "[T]o force or cause irresistibly"; and "[to] call upon, require, or command without possibility of withholding or denying." (Webster's New Internat. Dict. (3d ed. 1961) p. 463.) In a similar vein, Black's Law Dictionary defines the word to mean "[t]o urge forcefully; under extreme pressure." (Black's Law Dict. (6th ed. 1990) p. 282.)

not first been advised by the trial court (or by a party to the proceeding, including the other spouse) (a) of his or her privileges under Evidence Code sections 970 and 971 and (b) of the potential loss of those privileges under the provisions of Evidence Code section 973.[6]

In summary, we conclude that Sylvia, by testifying during defendant's preliminary hearing, effectively lost her privileges not to testify or to be called to testify against defendant during his subsequent trial. Thus, the trial court did not err in rejecting Sylvia's effort to assert her testimonial privileges under Evidence Code sections 970 and 971 during defendant's trial.

The People also argue the trial court based its "privilege ruling" on an entirely separate and alternate ground that defendant has not challenged on appeal—and, thus, defendant has abandoned and/or waived his right to challenge the trial court's "privilege ruling" on any ground. We disagree with the People's position on this issue. While it is true that defendant did not challenge the alternate rationale given by the trial court for its ruling, it is also true that the trial court's alternate rationale is based on an erroneous analysis of a pure question of law—and considerations of judicial efficiency dictate that we here address the trial court's analytical error so as to offer immediate guidance to the trial courts on this general issue of law.

Subsequent to the trial court's initial ruling on Sylvia's assertion of testimonial privileges under the Evidence Code, the trial court made the following statement:

"I wish to note for the record the following about the subject of privilege and the privilege under Section 970, 971. [¶] The code appears to indicate that the purpose of the privilege is to prevent serious disturbance or disruption of the marital relationship. [¶] I did want to note for the record that

---

[6]It is true that in *People* v. *Lankford* (1976) 55 Cal.App.3d 203 [127 Cal.Rptr. 408] (disapproved on other grounds in *People* v. *Collins* (1976) 17 Cal.3d 687, 695, fn. 4 [131 Cal.Rptr. 782, 552 P.2d 742]), the magistrate (prior to the wife's testifying at a preliminary hearing) carefully questioned the wife concerning the consequent loss of her privileges insofar as any future trial in the same overall criminal proceeding was concerned. (55 Cal.App.3d at p. 210.) However, there is nothing in that opinion which suggests that such a "screening" is *required* by the law.

On a related matter, we note that defendant was represented by the same defense counsel at both the preliminary hearing and the trial. If defendant had been particularly concerned about Sylvia's loss of privileges resulting from testifying at the preliminary hearing, there was nothing to preclude defense counsel, at the time of the preliminary hearing, from (a) advising Sylvia directly of her privileges (and the consequences attending her loss of those privileges as a result of her testifying at the preliminary hearing) and/or (b) requesting the magistrate to advise/question Sylvia in the manner suggested by *People* v. *Lankford, supra*, 55 Cal.App.3d 203.

Section 972 has extensive provisions for when the privilege does not apply. And it appears the legislature has made a rather strong policy statement that the privilege does not apply in cases involving a crime of violence against the other spouse or a crime involving a third person committed in the course of committing a crime against the spouse. [¶] And the policy reason is obvious. That the legislature feels it's more important to obtain the truthful testimony of the spouse under that circumstance in order to make a determination as to whether or not the other spouse has committed a crime of violence. And that it's more important in that case that that person be prosecuted than it is that the marital relationship not be disturbed. [¶] I don't believe that 972, subdivision (e), subparagraph two applies literally. It says in a criminal proceeding in which a spouse is charged with a crime against the person or property of a third person committed in the course of committing a crime against the personal property of the other spouse, the privilege does not apply. [¶] But it's sufficiently close enough that I think it comes within the purview of that broad policy statement. And I think it's ample evidence that the legislature did not mean for the privilege to apply in such cases. [¶] ██ I just wanted to indicate that for the record as an additional reason for denying the defendant's motion to preclude the testimony of Mrs. Resendez on privileged grounds."[7]

The Evidence Code section 972, subdivision (e)(2) to which the trial court made reference states: "A married person does not have a privilege under this article in: . . . [¶] (e) A criminal proceeding in which one spouse is charged with: . . . [¶] (2) A crime against the person or property of a third person committed in the course of committing a crime against the person or property of the other spouse, whether committed before or during marriage."

██ As noted by the trial court, Evidence Code section 972, subdivision (e)(2) does not "literally" apply under the facts of the instant case. That fact, alone, is sufficient to preclude application of that statutory provision in this case: "The courts of this state, however, are not free to create new privileges as a matter of judicial policy and must apply only those which have been created by statute. [Citations.] [Likewise, the judicial creation of an exception to an existing statutory privilege] is similarly precluded . . . because

---

[7]Notwithstanding the trial court's articulation of the matter, it had not actually ruled on a motion by defendant to preclude testimony by Sylvia. Rather, and more accurately, the trial court had ruled on Sylvia's effort to assert her testimonial privileges under Evidence Code sections 970 and 971. The testimonial privileges established under Evidence Code sections 970 and 971 "deal with the privilege of a spouse not to be a witness against his will against the other spouse. This privilege is above and beyond the privilege not to disclose privileged communications. It is individual to the spouse called as a witness and may not be claimed by the spouse against whom the testimony is offered." (*People* v. *Dorsey* (1975) 46 Cal.App.3d 706, 716 [120 Cal.Rptr. 508].)

the area of privilege 'is one of the few instances where the Evidence Code precludes the courts from elaborating upon the statutory scheme.' [Citation.]" (*Dickerson* v. *Superior Court* (1982) 135 Cal.App.3d 93, 99 [185 Cal.Rptr. 97].) The trial court's belatedly articulated "second reason" for rejecting Sylvia's assertion of testimonial privileges under Evidence Code sections 970 and 971 constituted an erroneous application of Evidence Code section 972, subdivision (e)(2) to a fact situation that was only "sufficiently close enough" (to the trial judge's way of thinking) to the precise fact situation delineated in (and required by) that statutory provision.

## II.*

### *Permitting Lester to Testify as a Witness to the Assault*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III.

### *The Validity of the Restitution Order*

The probation officer's report which was submitted to the trial court prior to sentencing (and of which defense counsel had knowledge) recommended that defendant be ordered to pay a restitution fine of $9,000. At the sentencing hearing, the trial court did not follow the probation officer's recommendation—but, instead, ordered defendant to pay $100,000 in direct victim restitution to Lester. The trial court stated: "The Court will impose a six-thousand-dollar restitution fine. Strike that. I'm going to order that the defendant make restitution to the victim, Lester Lira. [¶] I don't recall if there's a limit on the amount the Court can order under [Government Code section 13967, subdivision (c)]. I believe there is no limit. [¶] I'm going to order restitution in the sum of one hundred thousand dollars to Lester Lira pursuant to [section 13967, subdivision (c)] of the Government Code. I'm not going to order a restitution fine."

The statutory provision to which the trial court had reference, Government Code section 13967, subdivision (c), authorizes (and, under certain circumstances, mandates) courts to order that payments of restitution be made directly to a crime victim. It states in relevant part:

"In cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine [provided for in subdivision (a) of the same section], the court shall order restitution to be paid to the

*See footnote, *ante*, page 98.

victim. . . . Notwithstanding subdivision (a), restitution shall be imposed in the amount of the losses, as determined. The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. A restitution order imposed pursuant to this subdivision shall identify the losses to which it pertains, and shall be enforceable as a civil judgment. . . . [¶] Restitution ordered pursuant to this subdivision shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the victim, or victims, for all determined economic losses incurred as the result of the defendant's criminal conduct. . . . [¶] For any order of restitution made pursuant to this subdivision, the defendant shall have the right to a hearing before the judge to dispute the determination made regarding the amount of restitution."

Defendant did not question or otherwise challenge the $100,000 restitution order at the time it was made. Now, on appeal, however, defendant challenges the validity of the restitution order on two asserted grounds: (1) The trial court exceeded its jurisdictional authority by imposing a restitution order without identifying the losses to which the restitution pertained and without ascertaining whether the victim (Lester) had suffered an "economic loss" which qualified for restitution under court order; and (2) the trial court prejudicially erred by depriving defendant of any meaningful opportunity to contest the imposition of the $100,000 restitution order.

■ The People's primary response to defendant's challenge to the restitution order is to argue that defendant waived the issue of the order's validity by failing to object to it at the time it was made. Inasmuch as the issue of waiver is potentially dispositive of defendant's entire challenge to the validity of the restitution order, we address that issue first.

The People rely almost exclusively on the authority of *People* v. *Blankenship* (1989) 213 Cal.App.3d 992 [262 Cal.Rptr. 141] (a case which involved, in part, a restitution order promulgated pursuant to Gov. Code, § 13967, subd. (c), and which, hereafter, is cited simply as *Blankenship*) as support for their argument that defendant waived his right to contest the validity of the trial court's restitution order by not objecting to the same at the sentencing hearing.[10] *Blankenship*, however, does not support the People's argument.

*Blankenship* relied heavily on the opinion in *People* v. *Sandoval* (1989) 206 Cal.App.3d 1544, 1549-1550 [254 Cal.Rptr. 674] (hereafter cited

---

[10]The People also made a passing reference in their respondent's brief to *People* v. *Walker* (1991) 54 Cal.3d 1013, 1030 [1 Cal.Rptr.2d 902, 819 P.2d 861] as support for their position on the issue of waiver. This reliance on *Walker* is misplaced. *Walker* concerns the interplay between a defendant's right to be advised of the direct consequences of a plea of guilty, to receive "section 1192.5 advisements," that defendant's decision to enter a guilty plea and the imposition of a restitution fine on that defendant after entering such a plea. Neither the factual

simply as *Sandoval*) in delineating the circumstances in which a criminal defendant will be found to have waived his or her right to challenge a restitution order for the first time on appeal:

"Regarding the extent of the defendant's due process rights under subdivision (c), *Sandoval* states the general proposition that ' "[w]hatever the specific procedural safeguards required at a sentencing hearing concerning restitution, fundamental fairness must be assured . . . [and the] . . . defendant must be afforded a reasonable opportunity to be heard on the issue of restitution." ' (206 Cal.App.3d at p. 1550.) In *Sandoval*, the probation report contained a statement by the victim indicating the damage to property exceeded $4,000, however, the probation report recommended only a $1,000 fine and did not recommend restitution to the victim. The trial court nevertheless unexpectedly ordered $4,000 restitution to the victim. Since the defendant had no reason to contest the amount of restitution which was not recommended in the probation report or to expect such an assessment, on appeal the court found the defendant had been denied the opportunity to contest the validity of the $4,000 figure. . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"*A defendant's due process rights are protected when the probation report gives notice of the amount of restitution claimed and expected to be ordered under Government Code section 13967, and the defendant has an opportunity to challenge the figures in the probation report at the sentencing hearing.*" (*Blankenship*, 213 Cal.App.3d at pp. 996-997, italics added.)

In essence, then, *Blankenship* and *Sandoval* stand for the proposition that a criminal defendant's silence at the time a direct victim restitution order is made will not act as a waiver of the defendant's right to challenge the validity of that restitution order for the first time on appeal if the sentencing court rejects the recommendations in the probation report regarding a restitution fine (payable pursuant to Gov. Code, § 13967, subd. (a)) and summarily orders direct payment of restitution to the victim(s) in a certain amount (payable pursuant to Gov. Code, § 13967, subd. (c)), all without setting a hearing thereon or, at the least, obtaining an express waiver of such a hearing from the defendant—precisely because such conduct by the sentencing court would violate a defendant's fundamental right to the due process of law (most particularly, to the "fair notice" aspect of due process). ■ This is consistent with the general principle of constitutional law that violations of fundamental constitutional rights will not be

context which underlay the *Walker* case nor the policy concerns which underlay the Supreme Court's analysis of the legal issues therein raised are present in this case. Consequently, *Walker* is simply inapplicable in this case.

deemed waived by virtue of mere silence. ("Of course, there can be no waiver of a constitutional right absent 'an intentional relinquishment or abandonment of a known right or privilege.' [Citation.]" (*People* v. *Mancheno* (1982) 32 Cal.3d 855, 864 [187 Cal.Rptr. 441, 654 P.2d 211].))

We are unable to meaningfully distinguish our case factually from *Sandoval*. In both cases, the sentencing court, without prior "warning," significantly rejected (and, in this case, totally rejected) the probation officer's recommendations as to the amount of restitution to be ordered and as to the nature of the restitution to be ordered (that is, whether the restitution was to be direct victim restitution or a restitution fine).[11] We conclude (in like manner as did the court in *Sandoval*) that the trial/sentencing court's absolute refusal to accept the restitution recommendations of the probation report, coupled with that court's peremptory imposition of a restitution order totally at odds with the recommendations of the probation report, all without affording defendant a reasonable opportunity to challenge the accuracy/validity of the restitution order which was made, denied defendant his constitutional right to the due process of law. Consequently, we do not find that defendant waived the issue of the validity of the restitution order by not objecting to the same at the sentencing hearing.[12]

Having concluded that defendant can raise the issue of the validity of the restitution order for the first time on appeal, we now reach the substantive merits of defendant's contentions concerning that issue.

 There is no doubt that the trial court erred in the manner by which it considered and ordered the restitution here in question:

(1) Government Code section 13967, subdivision (c) limits direct victim restitution to "economic loss." To the extent that "economic loss" is understood as being substantively equivalent to "pecuniary loss," as that latter phrase is defined in section 13960, subdivision (d) of the Government Code (see *People* v. *Williams* (1989) 207 Cal.App.3d 1520, 1524 [255 Cal.Rptr. 778]), then "economic loss" includes only those expenses categorized in Government Code section 13960, subdivision (d) and "for which the victim

---

[11]Further, unlike *Blankenship*, the sentencing court in this case did not offer defendant an opportunity to challenge the accuracy of the $100,000 restitution order (either at the sentencing hearing or at a later hearing). Rather, the sentencing court summarily made the restitution order and then immediately proceeded on to other matters.

[12]It may well be that a criminal defendant is obligated to *request* such a hearing (or waive the same) in those cases where the defendant has received adequate notice, in the probation report, of the recommended nature and amount of a direct victim restitution order. (See *Blankenship*, 213 Cal.App.3d at p. 997, fn. 4.) However, no such notice was given in this case and, consequently, we need not (and do not) reach the issue of whether such a request would otherwise be a prerequisite to obtaining such a hearing.

has not and will not be reimbursed from any other source." (Gov. Code, § 13960, subd. (d).) Here, the probation report discloses that Lester's medical expenses have been paid by Medi-Cal.

(2) Government Code section 13967, subdivision (c) requires that the trial court "identify the losses to which [the direct victim restitution order] pertains." Here, the trial court omitted any statement identifying the specific economic losses to which the restitution order pertained. As stated in *Blankenship*: "We conclude the Legislature intended restitution orders under subdivision (c) for economic losses to be supported by reference to a factual basis for the claim. This would more adequately apprise defendants of the accuracy of restitution claims, permit the court to better evaluate their merits, and perhaps forestall challenges to those orders." (213 Cal.App.3d at p. 998.)

(3) Finally, Government Code section 13967, subdivision (c) provides defendants with "the right to a hearing before the judge to dispute the determination made regarding the amount of restitution." Here, no such hearing was provided to defendant.

Given the above errors, the trial court's restitution order must be vacated. This matter must be remanded to the trial court with directions that it conduct a hearing pursuant to Government Code section 13967, subdivision (c) to permit defendant to dispute the determination made by the trial court regarding the amount of restitution to be paid by defendant.

## DISPOSITION

The judgment of conviction is affirmed in full. The restitution order under Government Code section 13967, subdivision (c) is hereby and herewith vacated. This matter is remanded to the trial court with directions that it conduct a restitution hearing in accordance with law and consistent with the views expressed in this opinion.

Dabney, Acting P. J., and McKinster, J., concurred.