Filed 2/26/15  P. v. Whicher CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040201 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS122470) |
| v. | |
| TIMOTHY RYAN WHICHER, | |
| Defendant and Appellant. | |

Defendant Timothy Ryan Whicher appeals an order of restitution following his no contest plea to numerous counts of domestic abuse.  On appeal, defendant asserts the trial court abused its discretion in ordering restitution for his victim's relocation, as well as by refusing to allow him to present evidence that his victim's restitution request was opportunistic.

## STATEMENT OF THE FACTS AND CASE

This case arises out of an incident of domestic violence, as well as some past incidents of violence perpetrated by defendant on his then wife of 22 years. The primary offense occurred on December 27, 2012, when defendant and the victim were in Carmel for an overnight trip.  When they arrived, defendant, who is an alcoholic, had several drinks, which concerned the victim because of the way defendant acted toward her when he was drunk.  During dinner at the hotel, defendant and the victim began arguing and

defendant told her their marriage was over. The victim left the restaurant and went back to their room to pack her belongings so she could leave and return home.

While the victim was packing, defendant came into the room and began arguing with her again. Defendant physically prevented the victim from leaving the room. The victim then went out onto the deck outside the room to get away from defendant, but he followed her. Defendant grabbed the victim by reaching his arm around her, and grabbed the back of her head and neck. Defendant pulled the victim in and put his other hand over her mouth and nose. As the victim was struggling with defendant, defendant knocked her to the ground. Defendant had his body weight on the victim, and again tried to put his hand over her mouth and nose. Defendant put his fingers in the victim's mouth, and she bit his finger. Defendant said, "I'm going to kill you." The victim begged defendant to stop and to think of their daughters.

While the victim was pinned on the deck, another hotel guest came out onto the deck of her room next door and asked if everything was okay. The victim yelled for help, and defendant got off of her and left the deck area.

Employees from the hotel arrived, and separated defendant and the victim. Defendant said to the victim, "don't do this." The victim stated she thought defendant was going to kill her, and if it were not for the neighboring guest's intervention, he would have succeeded. The victim stated that defendant was physically violent with her throughout their entire marriage. She never reported the incidents, and told herself that she would get out of the marriage when her three daughters were grown and out of the house.

Defendant was arrested at the scene. Defendant's three adult daughters were interviewed following his arrest. Each of them attested to the fact that they had witnessed their father drink excessively and physically and verbally abuse their mother for years.

As the result of the incident in Carmel as well as other incidents of domestic violence perpetrated by defendant on his then wife, defendant was charged by information in February 2013, with attempted first-degree murder (Pen. Code, §§ 664/187, subd. (a)[1]; count 1); four counts of assault with a deadly weapon (§ 245, subd. (a)(4); counts 2, 6, 8, 9); one count of making a criminal threat (§ 422, subd. (a); count 3); one count of witness dissuasion (§136.1, count 4); and two counts of infliction of corporal injury on a spouse (§ 273.5, subd. (a);  counts 5, 7).

Defendant pleaded no contest to counts 4, 5, 7 and 9, in exchange for an eight-year suspended prison sentence and probation.  As part of the negotiated plea, defendant agreed to pay restitution in an amount to be determined at a later date, and agreed to waive all appellate rights.

On September 13, 2013, following a contested hearing, the court ordered defendant to pay $18,608.25 in direct restitution.  The victim had originally requested an amount of $29,410.92.

Appellant filed a notice of appeal on September 24, 2013.  This Court denied without prejudice appellant's application for a certificate of probable cause on March 6, 2014, ordering that the application would be considered with the appeal.

### DISCUSSION

Defendant asserts on appeal that the trial court erred in ordering restitution to the victim for her relocation expenses, because the request for restitution did not meet the statutory requirements.  In addition, defendant argues the court erred in refusing to allow him to present evidence at the hearing that the restitution request was opportunistic.

The Attorney General asserts defendant may not bring these claims on appeal, because he did not secure a certificate of probable cause from this court, and he waived his appellate rights as part of his plea agreement.

---

[1]  All further statutory references are to the Penal Code.

3

*Certificate of Probable Cause and Waiver*[2]

In this case, defendant's failure to obtain a certificate of probable cause does not bar his claim on appeal. A defendant must obtain a certificate of probable cause to challenge the validity of a guilty plea. (§ 1237.5; *People v. Panizzon* (1996) 13 Cal.4th 68, 74.) However, a defendant need not obtain a certificate if the appeal does not challenge the validity of the plea, but instead relates to discretionary sentencing matters that occurred after entry of the plea. (*People v. Mendez* (1999) 19 Cal.4th 1084, 1096.) Here, defendant challenges the imposition of $18,608.25 in victim restitution, which was a discretionary sentencing choice made by the trial court after defendant entered his plea. Therefore, the lack of a certificate of probable cause does not bar his claim on appeal.

In addition, although defendant waived his right to appeal as part of his plea bargain in this case, such waiver does not apply to future errors that defendant may not have contemplated at the time the waiver was executed. (*People v. Panizzon, supra*, 13 Cal.4th at pp. 84-86.) Here, at the time defendant executed the waiver of his right to appeal, he had agreed to pay restitution to the victim in an amount to be determined by the trial court. However, the error alleged by defendant here, is that the court abused its discretion in ordering him to pay restitution for the victim's relocation expense when the statutory requirements for such an award were not met. In addition, defendant asserts the court erred in failing to allow him to present evidence at the restitution hearing that the victim's request was opportunistic. These alleged errors occurred after defendant's waiver of appellate rights, and as a result, we will consider them on appeal.

### *Restitution for Relocation Expenses*

Defendant argues that the court's order that he pay his victim $18,608.25 for relocation expenses was improper, because the request did not meet the statutory

---

[2] Defendant filed an application for a certificate of probable cause with this court prior to filing his appeal. We ordered that the application be considered with the appeal.

requirements. In addition, defendant argues the court erred in failing to allow him to present evidence that the victim's request was opportunistic given their divorce proceedings.

When considering restitution, the court " 'must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498.) Restitution orders are reviewed for abuse of discretion. (*Ibid.*) " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " (*Id.* at p. 499.)

Section 1202.4, subdivision (a), sets forth the requirements for ordering restitution by stating that "a victim of a crime who incurs economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." The statute further provides: "[I]n every case in which a victim has suffered economic loss as a result of defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order based on the amount of loss claimed by the victim or victims, or any other showing to the court." (§ 1202.4, subd. (f).)

Section 1202.4, subdivision (f)(3)(I) allows restitution for: "Expenses incurred by an adult victim in relocating away from the defendant, including, but not limited to, deposits for utilities and telephone service, deposits for rental housing, temporary lodging and food expenses, clothing, and personal items. Expenses incurred pursuant to this section shall be verified by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim."

Defendant asserts the court erred in ordering restitution for the victim's moving expenses because the law enforcement officer who submitted the declaration in support

of the request, Deputy Kathy Palazzolo, did not verify that the victim's move was "necessary for [her] personal safety." (§ 1202.4, subd. (f)(3)(I).) Therefore, defendant argues, the request fails to satisfy the requirements set forth in section 1202.4, subd. (f)(3)(I), and may not be ordered.

While Deputy Palazzolo's declaration does not use the word "necessary" in connection with the victim's relocation, it most certainly conveys the need for the move to protect the victim's personal safety. Deputy Palazzolo stated that she had personally spoken to the victim and her children many times, and that the victim described the history of "verbal, mental and physical abuse" she endured while married to defendant while living in her prior residence with him. The victim told Deputy Palazzolo that she was afraid for her safety at the time she moved, she continues to be afraid for her safety and fears retaliation by defendant. The victim also stated that she moved to a location that is unknown to defendant, and is remaining there "out of safety concerns" because she fears defendant.

Deputy Palazzolo's declaration, when viewed in its entirety, supports a finding that the move was "necessary for the personal safety" of the victim. (§ 1202.4, subd. (f)(3)(I).) Despite defendant's argument to the contrary, the declaration's use of the present tense with regard to the victim's continuing fear of defendant does not prove that the relocation was not "necessary for [her] personal safety." (*Ibid.*)

Moreover, the fact that the victim's original residence may have been secure by objective standards does not itself obviate the need to relocate the victim for her personal safety. Here, defendant relies heavily on the case of *People v. Mearns*, *supra*, 97 Cal.App.4th 493, wherein the court ordered restitution for a rape victim's relocation from her existing mobile home to a new mobile home that was more structurally secure. The court ordered restitution in *Mearns* based in part on the police officer's statement that the victim's "original mobile home was incapable of being secured from intruders because of

6

its shoddy construction." (*Id*. at p. 497.) Defendant extrapolates from this that because the victim's original residence in the present case was more secure than the mobile home in *Mearns*, relocation to a different residence was not necessary for personal safety.

Here, the victim's concern for her safety was not directly related to the objective security of her original residence; rather, she feared retaliation and continued abuse if she remained in the residence where she previously resided with defendant. Defendant abused the victim repeatedly over the years of their marriage. In addition, defendant had attempted to dissuade the victim from testifying against him. Under the circumstances, it is clear that relocating to a place unknown to defendant was necessary for the victim's personal safety.

The court did not err in ordering restitution for the costs of the victim's relocation in this case. Deputy Palazzolo's declaration expressed a necessity for the relocation to protect the victim's personal safety, satisfying the requirements of section 1202.4, subd. (f)(3)(I). In addition, there was a factual and rational basis for the restitution order, and as result, there was no abuse of discretion. (See *Mearns, supra*, 97 Cal.App.4th at p. 499.)

### *Defendant's Evidence at Restitution Hearing*

Defendant asserts the trial court erred in refusing to permit him to present evidence at the restitution hearing that the victim's restitution request was opportunistic. He claims that the court's refusal violated his constitutional right to present a complete defense.

We review the trial court's decision to admit or exclude evidence for abuse of discretion. (*People v. Vieira* (2005) 35 Cal.4th 264, 292.)

The evidence at issue here is related to defendant's position that the victim's request for relocation expenses was opportunistic, because she was planning a move for a period of time before the assault in this case. Specifically, defendant wished to present

7

his own testimony that his marriage to the victim was troubled, and that she provoked the assault that is the subject of this case in order to gain access to monies in a joint checking account shared by she and defendant. In support of his proffered testimony, defendant offered evidence that the victim withdrew a total of $92,417 on dates when defendant was in custody, a letter from the victim's divorce attorney to defendant's business associate saying that she would not be returning the money to the joint account, and the victim's declaration in her divorce action saying that she told her daughters to withdraw money from the joint account on the night of the assault.

Defendant asserts all of this evidence he offered should have been admitted, because it was relevant to the victim's motivation in seeking reimbursement for her relocation expenses. Defendant further argues that if the victim was already planning a move, and was acting in ways to protect her financial interests in her divorce action, then her move was not a result of his criminal acts, and was not necessary for her personal safety.

Here, the court's decision to exclude defendant's proffered evidence was based in part on its finding that the prosecution had met its burden of establishing that the victim relocated to protect her personal safety because of defendant's criminal acts. As a result, the court excluded defendant's evidence, because the court deemed it irrelevant to the amount of restitution requested.

"At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other statement of, the amount of his or her economic loss. [Citations.] 'Once [a prima facie case is shown], the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim. [Citations.]' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.)

Here, defendant's evidence was not related to the amount of loss claimed by the victim; rather, it was meant to defend against the crime to which he pleaded. Defendant's

8

evidence would have shown that the victim provoked the fight at a specific time, so that defendant would assault her and as a result, she could opportunistically seek money from him for her previously intended move. This is unrelated to the amount of restitution the victim was seeking in this case. Whether or not the victim had contemplated moving out of her residence with defendant at a date prior to the assault in this case does not lessen the economic loss she suffered as a result of defendant's crimes against her. The court did not abuse its discretion in denying defendant's request to produce this evidence.

Moreover, the court's denial of defendant's request to produce the evidence in this case was not a denial of his constitutional right to due process. Because the issue of restitution is part of sentencing, and not the defense of the case, a defendant is not afforded the same constitutional rights he would have at trial. (*People v. Cain* (2000) 82 Cal.App.4th 81, 87.) " 'A defendant's due process rights are protected when the probation report gives notice of the amount of restitution claimed . . . , and the defendant has an opportunity to challenge the figures in the probation report at the sentencing hearing.' " (*People v. Resendez* (1993) 12 Cal.App.4th 98, 113, italics omitted.)

Here, defendant's proffered evidence challenged the victim's actions and motivations when she was assaulted by defendant. Defendant was provided with notice of the amount of restitution claimed, and his evidence was not related to challenging that amount. Defendant was afforded his due process rights in this case. (See *People v. Resendez, supra,* 12 Cal.App.4th. at p. 113.)

## DISPOSITION

The judgment is affirmed.

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

MÁRQUEZ, J.