Filed 2/18/21  P. v. Torres CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D076863 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD238344) |
| TYLER JORDAN TORRES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Joan E. Weber, Judge.  Affirmed.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Charles C. Ragland and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

In 2012, a jury convicted Tyler Jordan Torres of two counts of assault by means likely to produce great bodily injury (Pen. Code,[1] § 245 subd.

---

[1]    Undesignated statutory references are to the Penal Code.

(a)(1)), two counts of resisting an executive officer (§ 69), and one count of battery on emergency personnel (§ 243, subd. (b).) The counts were based on an incident in which Torres, in a standoff with San Diego Police Department officers, injured Officer Meeks and another officer. The court sentenced Torres to 9 years 4 months in prison, and set restitution at an "amount to be determined."

In May 2019, Torres was resentenced under section 1170.91. Thereafter, the People sought restitution for the two police officers. The probation report stated that Officer Meeks suffered a concussion, nose fracture, broken finger, broken teeth, and other facial injuries. The probation officer reported that Officer Meeks continued to receive medical attention for his injuries and anticipated a second surgery on his nose. Officer Meeks experienced migraine headaches daily, and personality changes from the multiple head blows he received. Due to a surgical procedure on his nose and a subsequent medical complication, Officer Meeks was unable to work for nine weeks after the incident. He was forced into medical retirement in 2014. The probation report recommended that Torres pay restitution to Officer Meeks in an amount to be determined by the court under sections 1202.4, subdivision (f) and 2085.5.

The court granted the People's request and ordered Torres to pay Officer Meeks $659,960.85 in restitution for lost future earnings, wages, and pension. Torres contends he was deprived of a "meaningful" opportunity to dispute the restitution amount because the trial court declined his request to obtain Officer Meeks's medical reports. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

At the restitution hearing, the parties did not present live testimony. The People did not seek medical expenses for Officer Meeks, only lost earnings in the amount of $659,960.85 as follows:  $580,276.29 for the period from September 13, 2014, to November 30, 2028, and $79,684.56 for the period from November 30, 2028, to November 30, 2037.  The People supported their calculations by attaching various exhibits showing Officer Meeks had planned to retire from the police department at age 67 with 20 additional years of pension credit; instead, he medically retired in September 2014.

In a declaration, Officer Meeks's wife stated he was forced to medically retire due to Torres's actions.  She also declared that Officer Meeks's medical retirement caused him to receive a "dramatically" decreased income because he became ineligible for certain pension benefits.  The People also submitted a statement from the San Diego City Employees Retirement System that effective September 2014, Officer Meeks would receive a monthly retirement payment of $3,403.38.

At the restitution hearing, Torres's counsel, who was not his trial counsel, argued she lacked certain pertinent records presented at trial and therefore was "severely limited" in her ability to dispute the requested restitution.  She specified:  "I do have the probation report.  I do have the preliminary hearing transcript.  However, I do not have the original reports, and I do not have the medical records that were submitted at trial."

The People responded:  "In regards to the medical records, . . . I pulled our file, which was basically in a banker's box, at an offsite storage location. We scanned the contents of that.  That has been provided to [defense counsel], with the exception of one copy of the statement in mitigation."

3

Following that representation, the court expressed its willingness to subpoena the trial records, but first requested to hear arguments. Defense counsel next presented the "substantive objections" she had to the People's claim for restitution, arguing the lost wages claim was "speculative" because Officer Meeks could have lost or changed his police department job over the next 20 years, thus reducing the amount of his pension and other benefits: "It seems fundamentally unfair to Mr. Torres that he would be responsible for a speculative amount in the future when we don't really know if that individual would have stayed on in that job or what other things could have occurred that would have stopped that person from working."

The People responded that restitution for lost future wages in a criminal case was permissible and that their calculations were based on the real loss Officer Meeks had suffered because of his medical retirement.

The judge, who had also presided over the trial, stated: "We all knew at the time of sentencing that Officer Meeks was going to have to medically retire, and he did, I believe, shortly after the sentencing. And his situation was much more tragic. He was much more severely injured." The court referenced a separate statement Officer Meeks submitted at the sentencing hearing, in which he explained how the incident "dramatically impacted" his life. Defense counsel acknowledged receiving a copy of that statement.

The trial court ruled: "You know, it was absolutely clear that [Officer Meeks] was going to be permanently disabled as a result of this attack. . . . I have no doubt in my mind that his current disabilities are directly related to the attack, and it has just continued to get worse. They're very consistent with what he described all the way back in November of 2012 . . . . It frankly was very shocking to me to hear that an officer, permanently disabled in the line of duty is docked on his pension like this. But it was very

4

surprising to me that a person who would have intended to retire as a full—with his full pension, that he is basically getting, what, about half of what he would have been entitled to if he had been able to work to his full age of retirement.  It is one thing if an officer just quits.  But when he is injured and can no longer work, that is a whole different situation.  So I am inclined to grant that relief requested."

The court asked defense counsel, "[D]o you wish to comment at all on the numbers submitted by [the People] regarding Officer Meeks?"  Defense counsel answered in the negative.  The court subsequently ordered Torres to pay Officer Meeks $659,960.85 in restitution.

DISCUSSION

Torres contends the court erred by ordering restitution without affording him an opportunity to locate copies of Officer Meeks's "medical or other records from trial as evidentiary support for the award."  He argues the court deprived him of the opportunity to meaningfully participate in the restitution hearing, violating both his statutory rights under section 1202.4, subdivision (f)(1), and his constitutional due process rights.  He therefore requests we remand this matter to the trial court for further evidentiary proceedings.

I. *Applicable Law*

At a victim restitution hearing, the People make a prima facie case for restitution based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss.  (*People v. Prosser* (2007) 157 Cal.App.4th 682, 690-691; *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048.)  "Once the victim has [i.e., the People have] made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the

5

victim." (*Prosser,* at p. 691.) "[T]he court's discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole." (*People v. Baker* (2005) 126 Cal.App.4th 463, 470; see also *In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1391-1392.)

"The standard of review of a restitution order is abuse of discretion. 'A victim's restitution right is to be broadly and liberally construed.' [Citation.] ' "Where there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' " (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.) "In reviewing the sufficiency of the evidence [to support a factual finding], the ' "power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact." (*People v. Baker, supra,* 126 Cal.App.4th at pp. 468-469.)

The defendant has a right to a hearing regarding the amount of restitution. (§1202.4, subd. (f)(1).) A defendant's due process rights at a restitution hearing are limited to a "fundamentally [ ]fair" procedure (*People v. Selivanov* (2016) 5 Cal.App.5th 726, 783), including the receipt of notice of the amount of restitution requested, and an opportunity to challenge the

6

requested amount at the hearing. (*Ibid.*) Section 1202.4, subdivision (f)(3), provides that "[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct, including . . . [¶] . . . [¶] (E) [w]ages or profits lost by the victim."

The trial court has discretion regarding the type of evidence it may consider at restitution hearings. This court affirmed a restitution order for a victim injured by an intoxicated driver, based in part on the trial court's own observation of the victim throughout the proceedings. (*People v. Millard* (2009) 175 Cal.App.4th 7, 29.) The People had requested restitution, including the victim's estimated lost future earnings, based on the victim's own testimony as to his lost earning capacity. (*Id.* at pp. 29-30.) Defense counsel argued that to determine the restitution amount, the People were required to present a physician's assessment. (*Id.* at p. 29.) The trial court declined to require that additional evidence, pointing out it had "observed [the victim] throughout the trial and these proceedings. He is a severely injured man." (*Ibid.*) We affirmed, pointing out the trial court "reasonably concluded" the People made a sufficient prima facie showing of loss without additional evidence. (*Id.* at p. 30.)

## II. *Analysis*

The court did not deprive Torres of his constitutional due process rights; rather, it gave him a full and fair opportunity to dispute the restitution amount. Torres was provided notice of the restitution amount in the People's moving papers, and he had a meaningful opportunity to challenge the restitution amount. The court invited him to present any evidence or arguments disputing the People's computation, but he produced no evidence showing he did not cause Officer Meeks the injuries that required

7

him to take early retirement, or that the restitution amount was erroneous because Officer Meeks would not suffer the stated amount of lost wages and pension. Instead, Torres maintains he did not have access to Officer Meeks's medical records. But because the People did not seek medical expenses, those records were not directly relevant to the substantive objection Torres's counsel raised, which dealt with whether the amount of lost wages sought was speculative. The lost wages amount sought was linked to specific amounts of lost salary during specific time periods, and Torres has not disputed those amounts either in the trial court or on appeal. Further, the People's moving papers and the probation report contained sufficient information showing Officer Meeks suffered severe injuries requiring his medical retirement. Finally, defense counsel did not press the court for a ruling on whether to proceed with subpoenaing the medical records she claimed were needed to evaluate the restitution claim. We may infer the trial court implicitly concluded the record that the prosecutor represented was forwarded to defense counsel was sufficient to address defense counsel's substantive objections.

"[T]he trial court is entitled to consider the probation report when determining the amount of restitution." (*People v. Foster* (1993) 14 Cal.App.4th 939, 946.) For example, statements by the victims of the crimes about the value of the property stolen constitute "prima facie evidence of value for purposes of restitution." (*Ibid;* but see *People v. Harvest* (2000) 84 Cal.App.4th 641, 653 [probation officer's report "may satisfy notice requirements for due process [citation], but it cannot take the place of evidence"].) "This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. [Citation.] When the probation report includes information on

8

the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount." (*Foster,* at p. 947.) Absent a challenge by the defendant, an award of the amount specified in the probation report is not an abuse of discretion. (*People v. Keichler, supra,* 129 Cal.App.4th at p. 1048.) After the People have "made a prima facie showing of [the victim's] loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim." (*People v. Prosser, supra,* 157 Cal.App.4th at p. 691.)

Here, the trial court reasonably concluded the People made a prima facie showing that Officer Meeks would lose $659,960.85 in earnings based on his wife's declaration, the retirement system's notification, Officer Meeks's statement at sentencing, and the court's recollection of the trial evidence showing Officer Meeks was unable to continue working because of his injuries. Torres did not challenge the computation of the restitution amount, and therefore the trial court did not abuse its discretion by ordering "full restitution" under section 1202.4, subdivision (f).

Torres relies on distinguishable cases. In *People v. Resendez* (1993) 12 Cal.App.4th 98, although the probation officer's report recommended a restitution fine of $9,000, the trial court instead ordered the defendant to pay $100,000 (*id.* at p. 111) without identifying the specific economic losses to which the restitution order pertained. (*Id.* at p. 115.) The Court of Appeal ruled the trial court's "absolute refusal to accept the restitution recommendations of the probation report, coupled with that court's peremptory imposition of a restitution order totally at odds with the recommendations of the probation report, all without affording defendant a reasonable opportunity to challenge the accuracy/validity of the restitution

9

order which was made, denied defendant his constitutional right to the due process of law." (*Id.* at p. 114.)  The court also concluded the defendant was not granted his right to a hearing before the judge to dispute the determination made regarding the restitution amount.  (*Id.* at p. 114.)  By contrast, here, the court's restitution order did not reflect a wide disparity between the probation report and the court's conclusion, as the probation report recommended restitution for lost wages in an amount to be determined by the court.  Additionally, restitution was based on Officer Meeks's documented lost wages due to his having to retire early.  Further, Torres had an opportunity to participate in a hearing on the People's restitution claim.

In *People v. Lockwood* (2013) 214 Cal.App.4th 91, the court concluded the defendant offered evidence that tended " 'to rebut the presumption established by [§ 1202.4, subd. (f)(4)(A)];' " therefore, the trial court should have reviewed other relevant records the defendant offered to determine whether " 'the information is necessary for the defendant to dispute the amount of the restitution order.' " (*Id.* at pp. 101-102.)  Here, despite the court providing him an opportunity to challenge the amount of restitution the prosecution sought, Torres failed to do so.  He therefore did not meet his burden of rebutting the presumption under section 1202.4, subd. (f)(4)(A) that the restitution amount resulted from the damage his criminal conduct caused.

DISPOSITION

The order is affirmed.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.

11