Filed 10/8/20  P. v. Bye CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C087438 |
| Plaintiff and Respondent, | (Super. Ct. No. P15CRF0435) |
| v. | |
| DENISE BYE, | |
| Defendant and Appellant. | |

A jury found defendant Denise Bye guilty of felony elder abuse as to her husband, Ronald,[1] and two counts of resisting an executive officer in connection with her subsequent arrest.  On appeal, defendant contends:  (1) the trial court erred by failing to explain to Ronald, who testified at trial, that he could not be jailed for refusing to testify; (2) defense counsel was constitutionally ineffective for failing to advise Ronald that the

---

[1]  Because Ronald and Denise share a last name, we will refer to Ronald by his first name and Denise by "defendant."

1

court was not permitted to jail him for refusing to testify; (3) the prosecutor committed misconduct by mischaracterizing the reasonable doubt standard or by implying that defense counsel did not believe defendant's version of events; (4) insufficient evidence supports defendant's conviction for elder abuse; and (5) the matter must be remanded to allow the trial court to conduct a mental health diversion eligibility hearing pursuant to Penal Code section 1001.36.[2]

Following our Supreme Court's recent decision in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), we agree the matter must be remanded for consideration of defendant's qualifications for mental health diversion pursuant to section 1001.36, and therefore we conditionally reverse the judgment of conviction. We disagree with each of defendant's other claims.

**FACTUAL AND PROCEDURAL BACKGROUND**

Ronald, who was 85 years old, called 911 to request that paramedics attend to defendant, his 53-year-old wife; he believed she had taken excessive medications in an attempt to harm herself. While he was on the phone with dispatch, defendant became upset with Ronald and tried to hit him. Ronald told dispatch that defendant put on her jacket, grabbed her purse containing the car keys, and attempted to leave the house. Ronald told defendant she was not going to take the car, and he blocked the door. The 911 call suddenly disconnected.

El Dorado County sheriff's deputies were dispatched to the house for a welfare check. As they approached the house, one deputy heard thudding noises that he perceived as sounds of a struggle or two people "wrestling around." Ronald answered the door after deputies loudly knocked for a minute to a minute and a half. Ronald, who

---

[2] Further undesignated statutory references are to the Penal Code.

is about five feet nine inches and 180 pounds, sat in the living room. A deputy agreed that Ronald is frail, and Ronald testified at trial that he is "[n]ot as strong as [he] used to be."

Defendant, who is approximately five feet six or seven inches and between 200 and 220 pounds, stood inside the front door in an aggressive posture with her fists clenched by her sides and her chest puffed out. She was breathing heavily and appeared to be "upset angry" (as opposed to "upset crying"). She appeared to be under the influence at the time.

Ronald told a deputy at the scene[3] that defendant pulled him from the doorway, punched him repeatedly all over his body, and threw him into the microwave cart and then onto the floor. He hurt all over, but he frequently hurts due to his age. He was fearful during the altercation, and he was relieved when patrol cars arrived. Ronald had bruising and redness on his left hand, blood blisters on his thumb, and scrapes on his knuckles from hitting the zipper on defendant's jacket. The deputy did not see any chairs turned over or anything broken on the floor.

Based on Ronald's statements at the scene, the deputies decided to arrest defendant for domestic violence. As they did so, defendant pulled away from them, attempted to kick them, thrashed around, and stomped on a deputy's foot.

Ronald testified at trial about what happened before the deputies arrived at the house. He took the car keys from defendant, and she lunged forward while he tried to keep them from her. When she lunged at him, he hit her in the chest with his closed fist. They began "tussling back and forth for the keys." Ronald did not remember whether defendant pushed him away from the doorway or hit him, but she might have punched him several times on his body. He might have lost his balance and fallen against the cart, or he might have fallen into the microwave cart when he pushed defendant. He also

_____

[3] Ronald testified at trial that he did not remember what he told the deputy but that he "told her what [he] thought happened."

3

testified that she pushed him while trying to get the keys in the same way that he pushed her to keep her from the keys, and during one of her pushes he fell onto the microwave cart. He stated defendant could not have been trying to hurt him because he would have been bruised if she had.

Ronald acknowledged at trial that he testified previously at the preliminary hearing. At that hearing, Ronald testified he did not remember how many times defendant hit him because everything happened so quickly. He might have testified defendant started punching him and throwing him around, but she was not punching him that hard. He recalled testifying at the preliminary hearing that defendant shoved him against the microwave cart while trying to get the keys.

A jury found defendant guilty of elder abuse as to Ronald (§ 368, subd. (b)(1); count 2) and two counts of resisting an executive officer (§ 69; counts 3 and 4). The jury found defendant not guilty of willfully inflicting corporal injury to Ronald. (§ 273.5, subd. (a); count 1.) The trial court sentenced defendant to three years' formal probation with a 90-day jail sentence as a special condition of probation. The jail term was stayed pending appeal.

Additional facts will be set forth in the Discussion as necessary.

## DISCUSSION

### I

### *Advising Ronald of Contempt*

Defendant claims the trial court failed to correctly advise Ronald that it could not jail him should he refuse to testify. She points to Code of Civil Procedure section 1219, subdivision (b), which provides in relevant part: "Notwithstanding any other law, a court shall not imprison or otherwise confine or place in custody the victim of a sexual assault or domestic violence crime for contempt if the contempt consists of refusing to testify concerning that sexual assault or domestic violence crime."

4

Before trial, the court excluded evidence that defendant had been previously arrested and that she suffered from posttraumatic stress disorder (PTSD). The court prohibited Ronald from discussing those topics during his testimony and warned Ronald it would hold him in contempt if he violated the order. Ronald asked the court, "You'll put me in jail if I violate that order?" The court replied, "I didn't say that. You could be held in contempt. So that's the Court's order. And [defense counsel] understands it, [the prosecutor] understands it, and that's the way that it is. So you have an absolute right to disagree with it. You've got no right whatsoever to disobey it." The court did not explain further.

Defendant suggests that we should construe Code of Civil Procedure section 1219, subdivision (b) to apply to situations where domestic violence victims "testif[y] too much" by violating a court order while testifying. And based on defendant's proposed broad reading of the statute, she argues the trial court's response to Ronald's question improperly implied that it could jail him for violating a court order restricting the content of his testimony.

" 'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citations.]" (*People v. Arias* (2008) 45 Cal.4th 169, 177.) The plain language of Code of Civil Procedure section 1219, subdivision (b) clearly demonstrates the statute's narrow application to situations where "the contempt consists of refusing to testify concerning that sexual assault or domestic violence crime." Code of Civil Procedure section 1219, subdivision (b) is inapplicable where a victim of domestic violence intends to disrupt a trial by testifying in violation of a court order.

5

Here, Ronald did not refuse to testify, and his question to the court did not involve any refusal to testify. Rather, Ronald asked the court if he would be jailed if he violated the court's order to refrain from discussing defendant's previous arrest and her PTSD, which the court had excluded as irrelevant. Because Ronald's inquiry did not involve his refusal to testify, Code of Civil Procedure section 1219, subdivision (b) is irrelevant to our analysis here. We are aware of no authority requiring a court to advise a victim of domestic violence that he or she cannot be jailed for contempt where, as here, the witness neither indicated any refusal to testify nor requested any information from the court as to what might be the consequences of such refusal. The court correctly informed Ronald in response to his query that it would hold him in contempt should he violate a court order restricting his testimony to admissible topics. Defendant's claim of error lacks merit.

II

*Ineffective Assistance of Counsel*

Defendant next contends her (two different) counsel at both the preliminary hearing and at trial were ineffective because *they* failed to advise Ronald that the trial court could not jail him for refusing to testify. Implicit in defendant's argument is the assertion that defense counsel has both the ability *and* the duty to ensure that domestic violence victim witnesses are prophylactically advised that the court may not jail them for refusing to testify. We disagree.

To prevail on her claim of ineffective assistance of counsel, defendant must show (1) that her counsel's representation was deficient, i.e., that it "fell below an objective standard of reasonableness," and (2) that prejudice resulted, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694.) "If the defendant makes an insufficient showing on either one of these components, the ineffective assistance claim fails." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.)

6

Defendant bases her claim on *People v. Resendez* (1993) 12 Cal.App.4th 98 (*Resendez*). In *Resendez*, the defendant's spouse testified against him at the preliminary hearing without knowledge that the spousal privilege shielded her from testifying against her spouse. (*Id.* at pp. 105, 106.) At trial, the defendant's spouse indicated she did not want to testify against her husband. (*Id.* at p. 106.) The trial court asked her why she testified at the preliminary hearing, and the spouse replied she did not want to, but "they" told her she had to. (*Ibid.*) The court ruled that she waived her privilege and had to testify at trial because she had testified at the preliminary hearing. (*Id*. at p. 107; see Evid. Code, § 973 ["Unless erroneously compelled to do so, a married person who testifies in a proceeding to which his spouse is a party, or who testifies against his spouse in any proceeding, does not have a privilege under this article in the proceeding in which such testimony is given"].)

The appellate court concluded that the defendant had presented insufficient evidence that the spouse was "erroneously compelled" to testify at the preliminary hearing because the spouse failed to show how she was compelled or who or what compelled her. (*Resendez, supra*, 12 Cal.App.4th at p. 108.) The court also concluded that no authority compelled the trial court to advise a testifying spouse of the existence of spousal privileges or of the potential loss of those privileges under Evidence Code section 973. (*Resendez*, at pp. 108-109.)

In a footnote, the *Resendez* court stated in dicta: "If defendant had been particularly concerned about Sylvia's loss of privileges resulting from testifying at the preliminary hearing, there was nothing to preclude defense counsel, at the time of the preliminary hearing, from (a) advising Sylvia directly of her privileges (and the consequences attending her loss of those privileges as a result of her testifying at the preliminary hearing) and/or (b) requesting the magistrate to advise/question Sylvia in the manner suggested by *People v. Lankford* [(1976)] 55 Cal.App.3d 203." (*Resendez, supra*, 12 Cal.App.4th at p. 109, fn. 6.)

7

*Resendez* is readily distinguishable from the facts here. The court in *Resendez* did not hold that a defense attorney has the *duty* to inform a witness--who the attorney does not represent and, in this case, is an adverse witness--of his or her right to decline to testify due to spousal privilege. But even if the *Resendez* court did suggest such a proposition, no authority extends that duty to require an attorney to advise an adverse witness that the court may not jail the witness for refusing to testify. Therefore, defendant's two counsels' performances did not fall below a standard of reasonable competence, and her claim of ineffective assistance of counsel fails.

III

*Prosecutorial Misconduct*

Defendant claims that the prosecutor committed misconduct during closing argument by either misrepresenting that the standard of proof in a criminal case is something less than reasonable doubt or by asserting that defense counsel was admitting defendant's guilt by arguing reasonable doubt in closing.

In his rebuttal to defense counsel's closing argument, the prosecutor stated: "So back in law school, my trial advocacy professor once told me that in a criminal trial when you have the facts in your favor, argue the facts. When you have the law in your favor, argue the law. And when you don't have the facts or the law in your favor, you argue reasonable doubt. So for the last 15 minutes, Mr. Cramer, because he's a good attorney -- he's been doing this longer than I have -- has argued to you reasonable doubt, because the facts are not in Mr. Cramer's favor, the law certainly isn't in Mr. Cramer's favor, and so he began and ended his closing argument with reasonable doubt.

"And reasonable doubt is an important standard, and I hope you do follow that instruction, because that's what the law is, and that's what we've been discussing and what I've gone over with you throughout my initial closing argument and the facts that meet all the elements, and so I'm not going to bore you by reiterating all of those all over again."

8

Defense counsel did not object to the prosecutor's statements or request that the court admonish the jury; therefore, the People assert that defendant's claim is forfeited. We agree. "As a general rule, ' "[a] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety." ' [Citation.] The defendant's failure to object will be excused if an objection would have been futile or if an admonition would not have cured the harm caused by the misconduct. [Citation.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 674.) Nothing in the record here indicates that an objection to the prosecutor's statement would have been futile or that the prosecutor's statement was so extreme or pervasive that a prompt objection and admonition would not have cured the harm.

Defendant characterizes the People's assertion that she forfeited her misconduct claim as "pointless" because the court in *Centeno*, after concluding defendant forfeited a prosecutorial misconduct claim by failing to object at trial, proceeded to treat defendant's claim as a claim of ineffective assistance of counsel. (*People v. Centeno*, *supra*, 60 Cal.4th at p. 674.) Defendant asserts, "It should have been obvious to anyone reading the opening brief that [she] was raising *Centeno* error in the same way that the appellant raised such error in *Centeno*, since [she] specifically discussed *Centeno* and argued that defense counsel was ineffective." It was not obvious.

In *Centeno*, unlike here, the defendant expressly claimed that his counsel was ineffective for failing to object to the prosecutor's allegedly objectionable statements. (*Centeno*, at p. 666 ["On appeal, defendant urges his conviction must be reversed because the prosecutor committed misconduct, and his counsel was constitutionally ineffective for failing to object"].) Here, defendant failed to include the ineffective assistance of counsel claim in her argument heading. (See *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but

9

are not clearly identified by a heading"].)  Her heading stated:  "The prosecution erred in rebuttal argument by mischaracterizing the reasonable doubt standard and implying that defense counsel believed [defendant] was guilty."  Further, defendant failed to expressly raise the issue of ineffective assistance of counsel in her briefing.  Therefore, *Centeno* is inapposite, and the argument is forfeited.

Nevertheless, we shall address the merits of defendant's claim of ineffective assistance of counsel and conclude it is not well taken.  We described the standard for determining whether an attorney provided ineffective assistance of counsel *ante*.  (See *Strickland v. Washington*, *supra*, 466 U.S. at pp. 687-688, 694.)  We conclude defendant failed to show that there is a reasonable probability that, but for her counsel's failure to object, the result of the proceeding would have been different.

While defendant contends that the prosecutor's argument encouraged the jury to convict her using a lesser standard than reasonable doubt, we see nothing in the record to suggest the prosecutor attempted to "water down" the reasonable doubt standard.  The cases defendant cites are distinguishable.  The prosecutor did not argue that the reasonable doubt standard required the jury to find defendant's innocence was reasonable (see *People v. Ellison* (2011) 196 Cal.App.4th 1342, 1353), that defendant had the burden of producing evidence to demonstrate reasonable doubt (see *People v. Hill* (1998) 17 Cal.4th 800, 832), that the jury could find defendant guilty even if the evidence raised reasonable doubt as to her intent (see *Deck v. Jenkins* (9th Cir. 2014) 768 F.3d 1015, 1026), or that the decision regarding guilt or innocence is an ordinary decision of the kind people make a hundred times a day (see *People v. Cowan* (2017) 8 Cal.App.5th 1152, 1161).  While we agree the prosecutor suggested that arguing reasonable doubt was a defense tactic aimed at avoiding arguing the facts or the law, the most reasonable interpretation of the prosecutor's statements is that an argument about reasonable doubt *is* *separate* from an argument about the substantive facts or the substantive legal standard. We find nothing in the record suggesting that the prosecutor diluted the reasonable doubt

standard; indeed, the prosecutor urged the jury to follow the "important" reasonable doubt instruction "because that's what the law is."

We also disagree that the prosecutor's statements necessarily implied that defense counsel believed defendant was guilty rather than merely asserted that the defense case was weak. While it is improper for a prosecutor to accuse defense counsel of fabricating a defense, a prosecutor "has wide latitude in describing the deficiencies in opposing counsel's tactics and factual account." (*People v. Bemore* (2000) 22 Cal.4th 809, 846, see also *People v. Medina* (1995) 11 Cal.4th 694, 759 [no misconduct where prosecutor said counsel can " 'twist a little, poke a little, try to draw some speculation, try to get you to buy something' "].) We agree with defendant that the facts and law are *necessarily* on a defendant's side if there is reasonable doubt that a defendant committed the charged offenses; in that respect the argument "makes no sense" and was improvidently made. But given that the prosecutor emphasized the importance of the reasonable doubt standard instruction, did not water down that standard or shift the burden of proof to the defense, and did not personally attack defense counsel's credibility, we conclude that defense counsel's objections to the prosecutor's statements, if made, were not reasonably likely to have changed the outcome of the trial.

IV

*Sufficiency of the Evidence*

Defendant contends her conviction for felony elder abuse must be reversed because insufficient evidence supports a finding that any pain she inflicted on Ronald was done under conditions likely to produce death or great bodily harm. We disagree.

"In determining the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (*People v. Leon* (2008) 161 Cal.App.4th 149, 156, see also *People v. Johnson* (1980) 26 Cal.3d 557, 578 [judicial review of a claim of

11

insufficient evidence includes review of "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt"].)

A defendant is guilty of felony elder abuse when he or she "knows or reasonably should know that a person is an elder . . . and who, *under circumstances or conditions likely to produce great bodily harm or death*, willfully causes or permits any elder . . . to suffer, or inflicts thereon unjustifiable physical pain or mental suffering." (§ 368, subd. (b)(1), italics added.) The court instructed the jury on elder abuse as follows: "To prove that the Defendant is guilty of this crime, the People must prove that: [¶] One, the Defendant willfully inflicted unjustifiable physical pain or mental suffering on [Ronald]; [¶] Two, the Defendant inflicted suffering on [Ronald] under circumstances or conditions likely to produce great bodily harm or death; [¶] Three, [Ronald] is an elder; [¶] And, four, when the Defendant acted, she knew or reasonably should have known that [Ronald] was an elder.

"Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. [¶] An elder is someone who is at least 65 years old. [¶] Unjustifiable physical pain or mental suffering is pain or suffering that is not reasonably necessary or is excessive under the circumstances. [¶] An elder does not need to actually suffer great bodily harm, but if an elder does suffer great bodily harm, you may consider that fact, along with all the other evidence, in deciding whether the Defendant committed the offense."

Defendant contends there is insufficient evidence to support the elder abuse conviction because there is no evidence she attacked Ronald with a weapon or hit him in the head, face, or other vulnerable area, Ronald did not describe the amount of force defendant used, and Ronald only suffered a few marks on his left hand and bruises on his

12

right hand.  In support of her contention, she relies on *In re Brandon T.* (2011) 191 Cal.App.4th 1491 and *People v. Beasley* (2003) 105 Cal.App.4th 1078.

In *In re Brandon T.*, *supra*, 191 Cal.App.4th at pages 1497 to 1498, the appellate court concluded that the defendant could not have committed an assault with a deadly weapon (§ 245, subd. (a)(1)) because the dull butter knife used to commit the assault was not a deadly weapon.  The court observed that the knife was dull and failed to cut the victim's cheek and throat despite the defendant's attempts to do so.  (*Brandon T.*, at p. 1497.)  Moreover, the knife broke when the defendant pressed it harder against the victim, which demonstrated the knife was not *capable* of producing death or great bodily injury.  (*Ibid*.)  Noting that the victim had only a small scratch on his cheek, the court stated, " 'if injuries result [from an assault], the extent of such injuries and their location are relevant facts for consideration' in determining whether an object or instrument was used in a manner likely to produce death or great bodily injury.  [Citation.]"  (*Ibid*.)

In *People v. Beasley*, *supra*, 105 Cal.App.4th 1078, the appellate court concluded insufficient evidence supported defendant's assault with a deadly weapon (§ 245, subd. (a)(1)) conviction where the defendant struck the victim with a broomstick and a vacuum cleaner attachment (*Beasley*, at p. 1086).  The court observed;  "It is certainly conceivable that a sufficiently strong and/or heavy broomstick might be wielded in a manner capable of producing, and likely to produce, great bodily injury, e.g., forcefully striking a small child or a frail adult or any person's face or head.  [Citation.]"  (*Id.* at p. 1087.)  But the court concluded that the victim's testimony was "far too cursory" to establish that defendant used the broomstick in such a manner that "was capable of causing, and likely to cause, great bodily injury or death."  (*Ibid.*)  The court observed that the victim did not describe the degree of force the defendant used in hitting her with the stick, and the record did not indicate the composition of the broomstick.  (*Ibid.*)

Unlike *Brandon T.* and *Beasley*, this case is not about whether a weapon used by a defendant constituted a deadly weapon. Rather, the issue before us is whether, viewed in the light most favorable to the verdict, defendant inflicted suffering on Ronald *under circumstances or conditions* likely to produce great bodily harm or death. Therefore, we must determine whether the version of events Ronald relayed to the deputy at the scene-- that defendant pulled him from the doorway, punched him repeatedly all over his body, threw him into the microwave cart, and threw him onto the floor--constituted circumstances or conditions likely to produce great bodily harm or death as to Ronald, a frail, elderly man.

In *People v. Racy* (2007) 148 Cal.App.4th 1327, the defendant zapped the 74-year-old victim in the leg with a stun gun, followed him into the bedroom, took his wallet, and tore his jean pocket (*id*. at pp. 1330-1331). The victim tripped during the struggle. (*Id.* at p. 1331.) We concluded the evidence supported a felony elder abuse conviction "because there was sufficient evidence from which the jury reasonably could have concluded defendant willfully inflicted pain or mental suffering on [the victim] 'under circumstances or conditions likely to produce great bodily harm or death.' (§ 368, subd. (b)(1).)" (*Id.* at p. 1333.) We observed that the jury could have concluded that the defendant's actions "likely could have caused [the victim] to fall and break a bone, causing him great bodily harm. As stated, [the victim's] knees are disabled and he is 74 years old, which, as a matter of common knowledge, is an age that carries with it an increased risk of bone fractures from a fall. The jury was in the best position to observe [the victim's] condition at trial, and we will not second-guess the jury's finding that defendant inflicted pain or suffering on [the victim] 'under circumstances or conditions likely to produce great bodily harm or death' where the record contains sufficient evidence to support that finding." (*Ibid.*)

14

Defendant attempts to distinguish *Racy* by arguing that case is actually about an armed attack on a disabled person, rather than an elderly person. We agree that *Racy* does not support the conclusion that *any* attack on an elderly person constitutes elder abuse. But the 85-year-old Ronald told the deputy that the much younger and larger defendant punched him all over his body, threw him into the microwave, and threw him on the ground. While Ronald's lack of serious injuries was a factor for the jury to consider, a reasonable jury could have concluded that throwing a frail, elderly man to the ground carries with it a high risk of bone fractures or other great bodily injury.

Defendant also asserts the jury's not guilty finding on the corporal injury to spouse count supports her argument that there is insufficient evidence to support the elder abuse count. But an acquittal on one charge does not affect the evidence of another. (See § 954; *People v. Lewis* (2001) 25 Cal.4th 610, 655-656 ["It is well-settled that . . . inherently inconsistent verdicts are allowed to stand"]; *People v. Pahl* (1991) 226 Cal.App.3d 1651, 1656-1657.) "The United States Supreme Court has explained: '[A] criminal defendant . . . is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. This review should not be confused with the problems caused by inconsistent verdicts. Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. [Citations.] This review should be independent of the jury's determination that evidence on another count was insufficient.' [Citation.]" (*Lewis*, at p. 656, quoting *United States v. Powell* (1984) 469 U.S. 57, 67.) Therefore, the jury's finding as to the corporal injury count is irrelevant to our analysis.

V

*Section 1001.36*

Defendant argues the case must be remanded for the trial court to conduct a diversion hearing pursuant to newly enacted section 1001.36, which she contends applies

15

retroactively to all cases not yet final on appeal. The People counter that section 1001.36 is not retroactive and that remand would be futile because defendant has not met her burden of proving she qualifies for diversion under the statute. After the briefing on appeal had completed, our Supreme Court resolved this issue in favor of defendant in *Frahs*, *supra*, 9 Cal.5th 618.

A. *Section 1001.36*

Effective June 27, 2018, the Legislature passed Assembly Bill No. 1810 (2018 Reg. Sess.), which added sections 1001.35 and 1001.36 to the Penal Code (Stats. 2018, ch. 34, § 24) and authorizes pretrial diversion for qualifying defendants with mental health disorders that contributed to the commission of the charged offense. (See *Frahs*, *supra*, 9 Cal.5th at pp. 624, 626.) Two express purposes of the law are to promote "[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety" and "[p]roviding diversion that meets the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35, subds. (a) & (c); *Frahs*, at p. 626.)

The statute defines "pretrial diversion" as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . ." (§ 1001.36, subd. (c).) The trial court may grant pretrial diversion under section 1001.36 if it finds: (1) defendant suffers from an identified mental disorder, including PTSD; (2) the mental disorder was a significant factor in the commission of the charged offense; (3) defendant's symptoms will respond to treatment; (4) defendant consents to diversion and waives her speedy trial rights; (5) defendant agrees to comply with treatment; and (6) defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (b)(1)(A-F).) If diversion is granted, the court may postpone prosecution for a maximum of two years and refer the defendant to an inpatient or outpatient mental health treatment program. (§ 1001.36,

16

subd. (c)(1)(B), (c)(3).)  Assuming the defendant performs satisfactorily during the period of diversion, the court must dismiss her criminal charges.  (§ 1001.36, subd. (e).)

B.  *Retroactivity*

Laws generally apply prospectively rather than retrospectively.  (See § 3.)  " 'But this presumption against retroactivity is a canon of statutory interpretation rather than a constitutional mandate.  [Citation.]  Therefore, the Legislature can ordinarily enact laws that apply retroactively, either explicitly or by implication.  [Citation.]  In order to determine if a law is meant to apply retroactively, the role of a court is to determine the intent of the Legislature.' " (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307.)  In *In re Estrada* (1965) 63 Cal.2d 740, our Supreme Court stated:  "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act.  It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.  The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final."  (*Estrada*, at p. 745.)  This rule "rests on the presumption that, in the absence of a savings clause providing only prospective relief or other clear intention concerning any retroactive effect, 'a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 881.)  The *Estrada* rule applies to legislation that ameliorates punishment for a class of persons.  (*Lara*, at p. 308.)

In *Frahs*, *supra*, 9 Cal.5th at pages 631 through 637, our Supreme Court concluded section 1001.36 applies retroactively to all cases not yet final on appeal.  Defendant's case is not yet final on appeal.  (See *People v. Vieira* (2005) 35 Cal.4th 264,

17

306 [" '[A] judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed' "].) Therefore, defendant is eligible for diversion.

### C. *Futility and Remedy*

The People contend that even if section 1001.36 is retroactive to all cases not yet final on appeal, defendant failed to make a prima facie showing that she meets all six requirements for diversion. Our Supreme Court rejected this argument in *Frahs*, *supra*, 9 Cal.5th at pages 637 to 638. The court held: "[A] conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when, as here, the record affirmatively discloses that the defendant *appears to meet at least the first threshold eligibility requirement for mental health diversion*—the defendant suffers from a qualifying mental health disorder (§ 1001.36, subd. (b)(1)(A)." (*Id.* at p. 640, italics added.) Defendant's probation report specified that she is diagnosed with PTSD, a qualifying mental disorder under the statute. (§ 1001.36, subd. (b)(1)(A).) Because defendant appears to meet the first threshold eligibility requirement, conditional limited remand is appropriate.

We follow the remand procedure set forth in *Frahs*, *supra*, 9 Cal.5th at pages 640 to 641, "which conditionally reversed defendant's convictions and sentence with the following instructions for the trial court in considering defendant's eligibility for diversion under section 1001.36: 'If the trial court finds that [defendant] suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion. If [defendant] successfully completes diversion, then the court shall dismiss the charges. However, if the court determines that [defendant] does not meet the criteria under section 1001.36, or if [defendant] does not successfully complete diversion, then [her] convictions and sentence shall be reinstated."

18

## DISPOSITION

The judgment is conditionally reversed and remanded for proceedings consistent with this opinion, to commence no later than 90 days from the filing of the remittitur.

_____/s/_____
Duarte, J.

We concur:


_____/s/_____
Murray, Acting P. J.


_____/s/_____
Krause, J.